## ARON et al. v. PENNSYLVANIA R. CO.
### No. 113.

Circuit Court of Appeals, Second Circuit.
Dec. 9, 1935.

Vollmer & Wildermuth, of Brooklyn, N. Y. (Robert J. Dixson, Henry Vollmer, Jr., and Geo. C. Wildermuth, all of Brooklyn, N. Y., of counsel), for appellants.

Platt & Walker, of New York City (Guernsey Orcutt, of Pittsburgh, Pa., and Roswell P. C. May, of New York City, of counsel), for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

Appellants are butchers and slaughter-house proprietors who, in the course of their business of buying and slaughtering livestock during the times here in question, paid to the appellee the charges due upon a number of carloads of livestock consigned to them. These shipments originated at points so remote from their destinations—Jersey City, N. J., Brooklyn, N. Y., and New York City, N. Y. —as to require a stop for food, water, and rest to comply with the Twenty-Eight Hour Law (34 Stat. 607, 608 [45 U.S.C.A. §§ 71, 72]). Some of these stops were made at a public stockyard in Pittsburgh, Pa., where the livestock was unloaded in the chutes, driven through runways to larger pens properly equipped, and there fed and watered. After a rest of five hours, the stock was driven back to the chutes and reloaded. The railroad paid the stock-yard corporation for the loading and unloading in this operation and, in addition, certain amounts for feed and a service charge of $1 per single and $2 per double deck car; such payments being in accord with the tariff schedule filed with the Secretary of Agriculture by the stockyard. The railroad absorbed the loading cost as required by section 15(5) of the Interstate Commerce Act (Act Feb. 28, 1920, c. 91, § 418, 41 Stat. 486, 49 U.S.C.A. § 15 (5), and passed on the other charges to the consignees who paid them with the freight. The appellants do not contest the charge for the feed, but contend that the service charge was illegally collected, being a transportation charge not included in the railroad's published tariff in violation of section 6 of the Interstate Commerce Act (49 U.S.C.A. § 6). They seek recovery under sections 6, 8, 9, and 16 of the act (49 U.S.C.A. §§ 6, 8, 9, 16). The charge thus made covered services which, in addition to driving the animals from the chutes to the rest pens, watching and caring for them during the rest period, and driving them back to the chutes, consisted in the cleaning of the pens, maintenance of the same, including water supply, insurance, repairs, electricity, taxes, etc. In the tariff rates filed by the appellee with the Interstate Commerce Commission, no rates were published for this service as required by section 6 of the act.

The court below said that it was a charge for transportation and that the appellants could recover the excess over a reasonable amount as damages, but since this involved a determination of a reasonable charge, the action could not be maintained in the absence of a finding by the Interstate Commerce Commission that the charges made were unreasonable and the complaint was dismissed.

Two questions are presented: (1) Whether the service charge was for transportation within the definition of section 1 (3) of the Interstate Commerce Act (49 U.S.C.A. § 1 (3), and if so, are the appellants entitled to recover; and (2) if the appellees are so liable, must the damages be first determined by the Interstate Commerce Commission?

The act, section 1 (3), provides: "The term 'transportation' * * * shall include * * * all instrumentalities and facilities of shipment or carriage * * * and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported." The Commerce Commission, in a case involving other shippers, ruled that service charges, identical with those here in suit, were for services within this definition of "transportation." Strauss & Adler v. New York Central R. Co. (1929) 153 I.C.C. 609. The question of whether or not certain services are within the definition of transportation is not purely a question of law, but it involves the determination of a fact. Atchison, Topeka & Santa Fe R. Co. v. United States, 295 U.S. 193, 55 S.Ct. 748, 752, 79 L.Ed. 1382; Adams v. Mills, 286 U. S. 397, 52 S.Ct. 589, 76 L.Ed. 1184. In the Atchison Case, the court reversed a dismissal of a suit to enjoin an order of the commission on the ground that the orders were invalid for lack of a prior finding of fact by the commission. Similarly, we think the question in this case is not solely one of law but of fact. The determination of a pertinent fact by the commission may be given collateral effect. See A. J. Phillips Co. v. Grand Trunk Western R. Co., 236 U.S. 662, 665, 35 S.Ct. 444, 59 L.Ed. 774; Keogh v. Chicago & N. W. R. Co., 271 F. 444 (C. C.A. 7); National Pole Co. v. Chicago & N. W. R. Co., 211 F. 65 (C.C.A. 7). And the determination of the commission will not be reversed if it is neither arbitrary nor unsupported by the evidence. Adams v. Mills, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184; Standard

Oil Co. v. United States, 283 U.S. 235, 51 S.Ct. 429, 75 L.Ed. 999. However, the courts are not concluded from examining anew a question involving the jurisdiction of the commission. See Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308. In accordance with this rule, there have been instances of the court's ruling on whether or not certain situations came within "transportation." In the Atchison & Santa Fe Case, supra, on the question of whether a certain situation was "transportation," the court said: "Usage and physical conditions combined definitely to end transportation, at least in respect of these shipments, with unloading into suitable pens as is now required by section 15 (5) [49 U.S.C.A. § 15 (5)]." This was spoken of shipments which had reached the unloading chutes and were being taken out over a certain route through the stockyards. Even though, in certain circumstances, transportation ends with the delivery of the livestock at the unloading chutes at destination, it does not necessarily end at the unloading chutes where the unloading is an incident in the trip dictated by the Twenty-Eight Hour Law (34 Stat. 607, 608, 49 U.S.C.A. §§ 71, 72).

The Hepburn Act of June 29, 1906 (34 Stat. 584, c. 3591), amending the Interstate Commerce Act, broadened the definition of "transportation" to give the commission jurisdiction over services necessarily incidental to shipment. These incidentals had been the sources by means of which abuses of overcharges and discrimination had been practiced and Congress brought the entire body of such services within the term "transportation." See Cleveland, C. C. & St. Louis Railway Co. v. Dettlebach, 239 U.S. 588, 593, 36 S.Ct. 177, 60 L.Ed. 453.

However, we do not decide whether the fact that the duty to make a stopover is imposed by another statute, the Twenty-Eight Hour Law, and that the Secretary of Agriculture is charged with the administration of that act, withdraws this service from that group defined as "transportation" with the charges therefor within the jurisdiction of the Interstate Commerce Commission.

■ If this be a violation, section 8 of the act (49 U.S.C.A. § 8) makes the carrier liable for the full amount of damages sustained by any shipper injured in consequence of the failure to file charges in its tariff schedules. The appellants argue that since the charge was illegally collected, they were injured and sustained damages in the entire amount of the payment. Whether or not it was illegal for the railroad to make the charge or could be penalized for making it, the penalty is not to accrue to the shipper's benefit. The shipper may recover only his damage. Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446. As this case notes, the court said of section 8 in Parsons v. Chicago & N. W. R. Co., 167 U.S. 447, 460, 17 S.Ct. 887, 892, 42 L. Ed. 231: "Before any party can recover under the act, he must show, not merely the wrong of the carrier, but that that wrong has in fact operated to his injury."

In Knudsen-Ferguson Fruit Co. v. Michigan Cent. R. Co. (C.C.A. 8) 148 F. 968, 974, certiorari denied 204 U.S. 671, 27 S.Ct. 786, 51 L.Ed. 672, the court held a mere violation by the carrier in making a charge did not thereby give the one who paid it a cause of action. It said: "To support a recovery under this section [(8) 49 U.S.C.A. § 8], there must be a showing of some specific pecuniary injury. A cause of action does not necessarily arise from those acts or omissions of a common carrier that may subject it to a criminal prosecution by the government."

Southern Pacific Co. v. Darnell-Taenzer Lumber, 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451, and Louisville & Nashville R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 46 S.Ct. 73, 70 L.Ed. 242, are not to the contrary. They deal with the right to sue as affected by a possible passing on of the damage sustained and the statements made there by the court must be read with reference to the point involved and decided.

■ The appellants did not, as they contend, suffer damages in the entire amount paid, but only in so far as the amount charged exceeded a reasonable rate for the services rendered. In Davis v. Portland Seed Co., 264 U.S. 403, 44 S.Ct. 380, 68 L.Ed. 762, the railroad charged less for a long haul than the published rate for a shorter haul included in the same route, violating thereby section 4 of the Interstate Commerce Act, 49 U. S.C.A. § 4. The plaintiff, having paid

a higher short haul rate, sought to recover the difference without proof of pecuniary damage other than payment. He argued that since the higher short haul published rate was illegal, it was in effect nonexistent. The court, following Pennsylvania R. Co. v. International Coal Mining Co., supra, held that proof of pecuniary damage was necessary to a recovery. See, also, News Syndicate Co. v. New York Cent. R. Co., 275 U.S. 179, 187, 48 S.Ct. 39, 40, 72 L.Ed. 225, where the court said: "They failed to make or publish any rate applicable to that part of the transportation. Section 8 [49 U.S.C.A. § 8] makes them liable for damages sustained in consequence of such failure. Had the through rate been just and reasonable, no damages would have resulted to plaintiff in error."

The commission, in making reparations for unspecified and unscheduled charges, has limited recovery to excess over a reasonable charge for services. Memphis Freight Bureau v. Kansas City Southern R. Co., 17 I.C.C. 90; Long Beach Chamber of Commerce v. Los Angeles & Salt Lake R. Co., 171 I.C.C. 145; Crenshaw Bros. Produce Co. v. Seaboard Airline R. Co., 177 I.C.C. 501.

The determination of damages in the instant case involves a finding of a reasonable rate, and the court will not determine that question without a prior finding by the commission. Although section 9 (49 U.S.C.A. § 9) gives an apparently clear right to sue, the courts in the interest of uniformity have declined to accept the decision of questions involving functions essentially belonging to the commission. Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075; Robinson v. Baltimore & O. R. Co., 222 U.S. 506, 32 S.Ct. 114, 56 L.Ed. 288; Norge Corporation v. Long Island R. Co. (C.C.A. 2) 77 F.(2d) 312. The court below correctly declined to entertain this suit, since there had been no prior finding by the Interstate Commerce Commission as to these appellants' damages.

Moreover, the Interstate Commerce Commission in a hearing on the Strauss & Adler claim, referred to above, determined that a charge of $1 for single and $2 for double deck cars was not unreasonable. Strauss & Adler v. New York Cent. R. Co., 188 I.C.C. 487. It is true that these appellants were not before the commission in that proceeding, but since a decision of the commission on the reasonableness of a rate is available to all shippers, when the determination is against the railroad, there is no reason for not accepting the decision in favor of the railroad with the same effect. A. J. Phillips Co. v. Grand Trunk Western R. Co., supra, National Pole Co. v. Chicago & N. W. R. Co., supra, and Corray v. Baltimore & O. R. Co. (D. C.E.D.Ill.) 2 F.Supp. 829, sufficiently established the effect of a determination between a railroad and one shipper in a case involving the same issues with a different shipper. It thus appears that the rates charged by the appellee were not unreasonable and that the appellants have not been damaged.

Judgment affirmed.