CANADA PACKERS, LIMITED, a Canadian corporation, Plaintiff-Appellee,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Defendants-Appellants.

No. 14659.

United States Court of Appeals Seventh Circuit.

March 2, 1965.

Rehearing Denied April 16, 1965.

Harvey Huston, Floyd Stuppi, Gus Svolos, Chicago, Ill., for defendants-appellants.

Charles B. Myers, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendants, The Atchison, Topeka and Santa Fe Railway Company and several other railroads[1] appeal (1) from a judgment of the district court for $1390.55 and interest thereon, and (2) an order granting plaintiff attorneys' fees, plus costs of the action.

Plaintiff in its complaint sought enforcement of an order of the Interstate Commerce Commission, pursuant to the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., against defendants as common carriers.

1. The Chesapeake and Ohio Railway Company, Chicago South Shore and South Bend Railroad, Detroit, Toledo and Ironton Railroad Company, Elgin, Joliet and Eastern Railway Company, Grand Trunk Western Railroad Company, New York Central Railroad Company, The New York, Chicago and St. Louis Railroad Company, Wabash Railroad Company.

The complaint alleges that defendants transported carload shipments of potash from Carlsbad and Loving, New Mexico, to plaintiff at the following points in Canada: Toronto, West Toronto and Welland, Ontario, Montreal, Quebec, and St. John, New Brunswick, and demanded and collected from plaintiff charges which were unjust and unreasonable, in violation of section 1 of said act.

The complaint also alleges that, pursuant to proceedings before it, the Commission on August 28, 1962 entered an order which found that plaintiff herein is entitled to reparation from defendants *"insofar as the transportation took place over their lines in the United States"* [2] and directed defendants and their Canadian connecting carriers to pay plaintiff reparations totaling $6,694.56 plus interest, upon which defendants have paid all that is due except the sum for which suit was here brought.

Defendants contend that they have complied with the terms of the Interstate Commerce Commission's reparation order and no additional amounts are owing to plaintiff. They emphasize that the reparation order of August 28, 1962 was expressly restricted to an award for transportation over lines in the United States. They assert that the amounts listed in the order represent the difference between (a) the total charges paid for the entire transportation service from the New Mexico origins to the Canadian destinations ($14.60 per ton to Toronto and Welland, Ontario, $17.20 to Montreal, Quebec, and $20.40 to Saint John, New

Brunswick) and (b) the total charges recomputed retroactively on the basis of maximum rates that are 80¢ per ton lower to Toronto and Welland than those charged ($13.80 in lieu of $14.60), 120¢ lower to Montreal ($16.00 in lieu of $17.20), and 140¢[3] lower to Saint John ($18.60 in lieu of $20.40).

They argue that the amounts listed in the Commission's order would require refunds of charges paid for transportation performed by Canadian railroads within Canada as well as on transportation performed within the United States.

1. At the time the shipments in question moved in this case, defendants maintained certain freight rates on potash from Carlsbad and Loving, New Mexico, to the United States border points where these shipments crossed into Canada. In a decision issued March 18, 1957, Consolidated Rendering Co. v. Atchison, Topeka & Santa Fe Ry. Co., et al., 300 I.C.C. 87, the Commission held that the freight rates on potash that had been in effect between January 5, 1948 and May 5, 1948 from Carlsbad and Loving, New Mexico, to Detroit and Port Huron, Michigan, and Vanceboro, Maine, were unreasonably high, and prescribed, retroactively, maximum reasonable rates on a lower level. A comparison of the rates in effect to these border crossings, at the time plaintiff's shipments moved, with the rates subsequently prescribed (in the Consolidated Rendering case) as maximum reasonable rates to those points, is as follows (rates shown are on a per-ton basis):

| Border Point | Rates At Time of Movement | Rates Later Prescribed As Maximum Reasonable | Difference |
|---|---|---|---|
| Detroit | $13.32 | $12.70 | 62¢ |
| Port Huron | 13.32 | 12.70 | 62¢ |
| Vanceboro | 17.28 | 16.00 | 128¢ |

---

2. Italics supplied for emphasis.

3. This figure of 140¢ was stipulated in this case. It probably should have been 180¢.

In the present proceeding, the Commission in 1962 held that the rates charged on the international shipments from Carlsbad and Loving to Toronto, Welland, Montreal and Saint John were unreasonable, and prescribed, retroactively, still lower rates as maximum reasonable rates, and ordered that plaintiff was entitled to reparation in the amount of the difference between the charges collected and those that would have accrued at the rates found to be reasonable, and thereby made the computations upon which the order of August 28, 1962 was based. While that order purports to limit its effect to transportation over lines in the United States, it is obvious that the computations upon which it is based were not so restricted.

Plaintiff seeks support for the Commission's order in News Syndicate Co. v. New York C. R. R., 275 U.S. 179, 48 S.Ct. 39, 72 L.Ed. 225. However, in that case, where there was a through rate from a point in Canada to New York City within the United States, the court pointed out, at 186–7, that it was the duty of the railroad to establish a rate from the international boundary to New York City, in the absence of which the shipper had been compelled to pay the through charges. The court sustained the jurisdiction of the Commission to determine the reasonableness of the charges exacted, i. e., the through rate. In the case at bar, rates from New Mexico to the border points were in effect and hence this case is not governed by News Syndicate.

Plaintiff also relies on Lewis-Simas-Jones Co. v. Southern Pac. Co., 283 U.S. 654, 51 S.Ct. 592, 75 L.Ed. 1333. However, that case was controlled by News Syndicate, as the court expressly stated, at 663, 51 S.Ct. 592. The defendant in Lewis is an interstate carrier by railroad and its lines connect at the international boundary at Nogales, Arizona with the line of a Mexican common carrier by railway extending from Navojoa, Sonora.

Three carloads of cowpeas were shipped from Navojoa to San Francisco, California, on through bills of lading issued by the foreign line and the rate charged was that stated in a joint tariff filed by the carriers with the Commission and its counterpart in Mexico. A complaint seeking reparations before the Commission alleged that the joint through rate was unreasonable. Defendant moved to dismiss the complaint on the ground that the Commission lacked jurisdiction over rates from points in a foreign country to points in the United States. However, the court pointed out that the tariff did not purport to apply to the American part of such international transportation which "must be distinguished from a through carload shipment brought to defendant at the boundary by a foreign carrier". The court, at 663, 51 S.Ct. at 596, commented upon the failure of defendant carrier to bring forward evidence that a rate on its own line to the international border "had been established as required by the act."

In the case at bar, defendants met the burden of proving the rates from Carlsbad and Loving, New Mexico to the Canadian border points. We are therefore required to conclude that the latter rates must be considered as a maximum guide in awarding damages to plaintiff. To conclude otherwise would mean that the defendant railroads would be required to pay reparation to a Canadian consignee on account of freight charges received for transportation performed within Canada by Canadian railroads which are not parties to this action. Such a result clearly is prohibited by the territorial limitation provisions of section 1 of the Interstate Commerce Act. 49 U.S.C.A. §§ 1 et seq.

For the reasons herein stated, the judgment and the order from which defendants have appealed are reversed.

Judgment and order reversed.